IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CV331 |
| | ) | |
| vs. | ) | |
| | ) | |
| $57,610.00 IN UNITED STATES CURRENCY and | ) | **BRIEF IN RESPONSE TO** |
| 2000 GMC SONOMA, | ) | **CLAIMANT'S MOTION FOR** |
| VIN 1GTCS1444Y8119967, | ) | **SUMMARY JUDGMENT** |
| | ) | **AND IN SUPPORT OF** |
| Defendants. | ) | **PLAINTIFF'S CROSS-MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |

### Introduction

On September 18, 2009, the Plaintiff filed a Verified Complaint for Forfeiture against the Defendant properties pursuant to Title 21, United States Code. The Complaint alleged the Defendant properties represent proceeds traceable to the exchange of a controlled substance or were used or were intended to be used to facilitate the possession, sale, receipt and distribution of a controlled substance, and are therefore forfeitable to the United States pursuant to Title 21, U.S.C., § 881(a)(4) and (6). The Verified Complaint for Forfeiture, Warrant for Arrest In Rem and Notice of Seizure and Procedure were served on the Defendant properties on September 25, 2009 and were served on the Claimant, through counsel, on September 28, 2009.

Sean Peterson, Claimant, filed an Answer to Plaintiff's Verified Complaint for Forfeiture, as required by Rule G(5)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset

Forfeiture Action.  In his Answer, the Claimant generally denied most of the salient allegations of Plaintiff's Verified Complaint.

The Claimant has moved for summary judgment based on law enforcements' warrantless search of his vehicle and the resulting seizure of the Defendant properties.  Mr. Peterson correctly assumes the United States relies on the automobile exception to support the warrantless search.  Mr. Peterson contends the exception is inapplicable because the surrounding facts did not rise to the level of probable cause and because the search was conducted away from the scene of the traffic stop.  The United States moves the Court for summary judgment on its own behalf, alleging the facts support the warrantless search of the Claimant's vehicle was valid under the automobile exception.

## Facts

The United States, of course, takes no issue with the facts presented by the Claimant, as they are the Nebraska State Patrol's reports setting forth the actions of the troopers involved.  The United States adds, however, Trooper Jason Bauer's Affidavit, Exhibit "C".  It contains the additional facts the United States would have elicited from the trooper had this matter gone to hearing.

## NECivR 56.1 Factual Statement

1. The Court has jurisdiction of this matter pursuant to Title 28, U.S.C., §§ 1345, 1355 and 1395, and pursuant to Title 21, U.S.C., § 881.

> Source:   Verified Complaint, Paragraph 1;
> Answer, Paragraph 1.

.
2. The Defendant properties are $57,610.00 in United States currency and a 2000 GMC Sonoma, VIN 1GTCS1444Y8119967.

> Source:   Verified Complaint, Paragraph 2;
> Answer, Paragraph 2.

3.  The Defendant properties are now and will be during the pendency of this action in the judicial district of the State of Nebraska.

> Source:   Verified Complaint, Paragraph 3;
> Answer, Number 3.

4.  On or about April 9, 2009, the Defendant properties were seized by troopers of the Nebraska State Patrol; said seizure took place on land, within the District of Nebraska.  Immediately after said seizure, administrative forfeiture proceedings were instituted by the United States Drug Enforcement Administration.

> Source:   Verified Complaint, Paragraph 4;
> Answer, Paragraph 4.

5.  Sean Peterson has filed a claim for ownership, pertaining to said Defendant property, with the United States Drug Enforcement Administration.

> Source:   Verified Complaint, Paragraph 5;
> Answer, Paragraph 5.

6.  On April 9, 2009,  Nebraska State Patrol Trooper J. Bauer stopped a 2000 GMC Sonoma pickup, driven by Sean J. Peterson, for a traffic violation.  Mr. Peterson was driving and is the registered owner of the vehicle.  John V. Busch was the only passenger.

> Source:   Exhibit A, p. 2, ¶¶ 2 and 3.

7.  While Trooper Bauer asked for Mr. Peterson's license and registration, he noticed what appeared to be numerous tapping screws on the driver's side floorboard.  During casual conversation, Mr. Peterson said he and Mr. Busch were traveling to Colorado to go skiing in Vail and Breckenridge.  Mr. Peterson said he owned his own real estate investment group and could take unlimited time off so he did not know how long they would stay in Vail/Breckenridge.  Mr. Peterson

said he and Mr. Busch had been friends for many years.  Mr. Peterson said he used to own a bar and hired Mr. Busch as a bartender.

Source: Exhibit A, p. 2, ¶¶ 3 and 4.

8.   Trooper Bauer checked the vehicle paperwork and noted the vehicle had been purchased on April 1, 2009, and the insurance was activated on April 7, 2009.  Trooper Bauer requested criminal history checks on both subjects.  Mr. Peterson had  recent drug charges, including harvesting and selling marijuana.  Trooper Bauer asked Mr. Peterson if he had ever been in trouble, and Mr. Peterson said yes, for harvesting marijuana and other charges.

Source: Exhibit A, p.2, ¶ 4; p. 3, ¶ 1.

9.   Trooper Bauer then approached Mr. Busch and asked him about their travel plans.  Mr. Busch said they were going to Denver to go snow boarding and fishing.  He said they were staying with friends of Mr. Peterson's in Denver.  When asked if he had ever been in trouble or arrest, Mr. Busch said no.  Records  showed Mr. Busch had been arrested numerous times for distribution of more than five pounds of marijuana.

Source: Exhibit A, p. 3, ¶¶ 2,3 and 4.

10.   Based on Trooper Bauer's suspicions and experience, he asked for and received permission from both subjects to search their persons, the vehicle and their belongings.  During the search, Trooper Bauer looked underneath the pickup and discovered a black box which sounded hollow when he knocked on it.  Trooper Bauer lowered the tailgate and removed the bed liner. Trooper Bauer found a hole had been cut in the tailgate and a metal compartment, which was held on by four bolts and a metal plate.  When Mr. Peterson was asked what was in the box, he replied,

"It's my piggy bank".  Mr. Peterson then asked to contact his attorney.  Mr. Busch refused to be interviewed.

Source: Exhibit A, p. 3, ¶ 6; p. 4, ¶¶ 1 and 2.

11.   Upon further inspection, a tool box in the back of the pickup had to be removed to get to the metal cover over the black box.  Inside the black box was a large black duffle bag containing a vacuum sealer, two unopened boxes of vacuum seal bags and a grocery sack containing four bundles of U.S. currency.  Three bundles were held together with a rubber band and one bundle was vacuum sealed.  The outside of the currency contained the writing "15, 15, 15, 25" (underlined) and "69".  A discretionary sniff of the currency was conducted with a positive indication for the odor of narcotics.  A total of $57,610.00 was seized as drug proceeds and the 2000 GMC Sonoma was seized for facilitation.  Mr. Peterson and Mr. Busch were released.

Source: Exhibit A, p. 4, ¶ 5.

## Argument

Under Rule 56(c), Fed. R. Civ. P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56©, Fed. R. Civ. P., mandates entry of summary judgment "against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotext Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on a party moving for summary judgment is only to "point[] out to the district court there are no genuine issues of material fact." Id. at 325.

Once the moving party has met this burden, the "opponent must do more than simply show there is some metaphysical doubt as to the material facts". <u>Matsushita Elect. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986). "[T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Id</u>.

"The Fourth Amendment's exclusionary rule applies to quasi-criminal forfeiture proceedings. If the currency and other contents from [the Claimant's] vehicle should be suppressed because of an unconstitutional search or and seizure, the government must [meet its burden] with other, untainted evidence." <u>United States v. $404,905.00 in U.S. Currency</u>, 182 F.3d 643, 646 (8th Cir. 1999), <u>cert</u>. <u>denied</u>, 528 U.S. 1161 (2000). The United States agrees with Mr. Peterson's position (Claimant's Brief, Filing No. 20, p. 5, ¶ 3) this case is ripe for summary judgment as the facts are not in dispute; the only contested matter is a question of law. And, that legal question is whether the vehicle exception to the warrant requirement supports the warrantless search of the Defendant vehicle. Mr. Peterson contends it does not, as there was no probable cause at the time he withdrew his consent and because the vehicle was not readily moveable when the search was conducted at the State Patrol office. The United States submits probable cause existed at the time the troopers detained Mr. Peterson.

The Eighth Circuit addressed the vehicle exception, and its mobility prong, in <u>United States v. Young</u>, 567 F.2d 799 (8th Cir. 1997). The defendant was accused of transporting stolen property in a U-Haul truck. <u>Id</u>. at 800–801. Law enforcement followed the truck and its occupants for about three days. <u>Id</u>. at 801. Law enforcement eventually made the decision to stop the truck. It was

impounded, taken to Pierre, South Dakota and searched; the stolen items were found inside of it.

Id.  This seizure and subsequent search were the issues on appeal:

> In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Supreme Court has insisted upon probable cause as a minimum requirement for a reasonable search.  The Court has also generally required that a search be preceded by the judgment of a magistrate on the probable cause issue and by the issuance of the warrant.  United States v. Helberg, 565 F.2d 993, 996 (8th Cir. 1997).  However, the Supreme Court has also held that an automobile may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the motor vehicle contains articles that the officers are entitled to seize.  Chambers v. Moroney, 399 U.S. 42, 48 ... (1970).  This exception is based on vehicular characteristics: mobility, which may create exigent circumstances rendering the warrant impractical, and the diminished capacity of privacy associated with the automobile.  United States v. Chadwick, 433 U.S. 1, 12 ... (1977); United States v. Helberg, supra, at 996.
>
> A review of the record in this case convinces us that there was probable cause to support the search and the seizure of the U-Haul truck. ...
>
> The defendants contend that even if there was probable cause for the search, there were no exigent circumstances which justified the search without a warrant.  The existence of exigent circumstances is determined as of the time of seizure rather than as of the time of search.  Chambers v. Moroney, supra, 399 U.S. at 52 ... ; United States v. Collins, 549 F.2d 557, 560 (8th Cir.), cert. denied, 431 U.S. 956 ... (1977).  When the truck was stopped on the Bad River Road, it was still mobile and thus any of the defendants' confederates could have removed the truck or its contents.  See United States v. Helberg, supra, at 997.  Moreover, in United States v. Chadwick, supra, 433 U.S. at 12, ... the Supreme Court noted that "we have also sustained 'warrantless searches of vehicles ... in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent.' Cady v. Dombrowski, 413 U.S. 433, 441–42 ... (1973)".

 Young, 567 F.2d at 802–803 (footnote omitted).

The search at issue in the case at bar took place at the State Patrol office.  But the *seizure* of

both occupants and the vehicle took place at the traffic stop–after the troopers found the after-market

container, Mr. Peterson commented, "it's my piggy bank", and then withdrew his consent.  That

7

seizure was not unlawful if the troopers had probable cause at the time.  Probable cause exists when, "given all the circumstances, there is a fair probability that contraband will be found in a particular place".  United States v. Walker, 900 F.2d 1201, 1204 (8th Cir. 1990) (citation omitted).

In United States v. Martel-Martines, 988 F.2d 855 (8th Cir. 1993), the defendant gave the trooper consent to search his pickup truck.  The trooper "could see that the truck bed had recently been reconstructed to support a concealed compartment several feet long and four to six inches deep".  Id. at 857.  The truck was then taken to the troop headquarters for further examination.  Id. "Trooper Moore's suspicions were aroused by Martel-Martines' evasive and inconsistent responses to routine questions, particularly about his purchase of the truck.  When Trooper Moore and Corporal Heskett examined the truck, they noted that its bed had been lowered, the underside modified, and an inaccessible hidden compartment built.  Information gathered during a consensual search can provide probable cause to search a vehicle more thoroughly or even to arrest its occupants.  See United States v. Strickland, 902 F.2d 937, 942–43 (11th Cir. 1990) (probable cause to search rusted, oversized, incongruous spare tire); United States v. Benevento, 836 F.2d 60, 66–67 (2nd Cir. 1987) (probable cause to search car's hidden compartment), cert. denied, 486 U.S. 1043 ... (1988).  Here, the officers acquired probable cause to conduct a warrantless search of the hidden compartment, either along side the highway or at the [troop headquarters] garage."  Id. at 858–59.

The Eighth Circuit again reached the same conclusion in United States v. Alverez, 235 F.3d 1086 (8th Cir. 2000).  A Nebraska State Patrol trooper asked and received consent to search the vehicle. Id. at 1088.  Troopers heard "thudding" noises in the spare tire as they shook it.  Id.  They cut into the tire and found methamphetamine.  Id.

The Circuit upheld the district court's denial of Alverez's motion to dismiss. "We need not speculate on what the outcome would have been had the troopers relied solely upon the consent given by Alverez, however, because observations made during the consensual search gave the officers probable cause to believe that there was contraband in the vehicle, thus lawfully expanding the scope of the search under the automobile exception to the warrant requirement. ... The thudding sound produced by the tire as it was being inspected indicated it was being used as a container. Because the troopers had probable cause to believe that contraband was secreted in the vehicle, in particular in the spare tire, they could lawfully complete a full and thorough search of the tire, including dismantling or damaging it." Id. at 1089.

In United States v. Banuelos-Romero, 2010 WL 6070000 , *4 (5th Cir. Feb. 22, 2010), the Fifth Circuit Court of Appeals recently reaffirmed its position that finding a secret compartment in a vehicle gave officers probable cause to search that compartment. The Eighth Circuit has not made such a definitive statement. But, in determining probable cause, the Eighth Circuit does sanction law enforcement officers drawing inferences based upon their experience. United States v. Cortez-Palomino, 438 F.3d 910, 913 (8th Cir. 2006) ("From their vantage point, the troopers immediately recognized the green cellophane wrapped packages as probable contraband. This provided probable cause for the officers to lower the tailgate and search the pickup without a warrant."); United States v. Barnes, 374 F.3d 601, 605 (8th Cir. 2004) (deputy placed his pen light inside the window seal, enabling him to illuminate the compartment within the door panel. "From his lawful vantage point, the deputy immediately recognized the packages hidden inside the door panels as probable contraband. At that juncture, he had probable cause to search the entire vehicle, and he was permitted to do so without a warrant."); United States v. Van Zee, 380 F.3d 342, 343–44 (8th Cir.

9

2004) (affirming warrantless search of defendant's vehicle based on credible narcotics investigator's testimony he saw a glass tube in the defendant's vehicle and knew with reasonable certainty it was the end of a methamphetamine pipe).

Trooper Bauer had more than a "good guess" as to what would be in the after-market container.  Based on his training and experience, there was a fair probability contraband or evidence of a crime would be found in it.  "[C]onduct which would be wholly innocent to the untrained observer ... might acquire significance when viewed by an agent who is familiar with the practices of drug smugglers and the methods used to avoid detection".  United States v. Wallraff, 705 F.2d 980, 988 (8th Cir. 1983) (citations omitted).  Trooper Bauer has been a law enforcement officer for ten years. Exhibit C, ¶ 1. He was a drug dog handler for three of those years. Id.  He has years of experience in detecting contraband and years of classroom and on-the-job interdiction experience. Exhibit C, ¶¶ 3,4 and 5. With that background, Trooper Bauer's contact with Sean Peterson and Jay Busch produced a number of factors that aroused his suspicion:

1.  His observation of the tapping screws on the driver's side floor board.  This meant the vehicle might have after-market alterations. Exhibit C, ¶ 8A.  In United States v. Chaidez, 906 F.2d 377, 384 (8th Cir. 1990), the Eighth Circuit affirmed the district court's denial of a motion to suppress under a totality of the circumstances theory, which included loose/missing screws on the car's side panels and rear seat.  "[A]n experienced law enforcement officer would know that drug couriers do not often leave their contraband strewn across the trunk or floor of a car, and that they frequently hide drugs beneath car seats or inside the cavity of a car's panels." Id. (citations and inner quotations omitted).

10

2. The passenger, Jay Busch, twice told Trooper Bauer he had never been arrested. Yet, Trooper Bauer's dispatch told him Busch had been arrested numerous times for distribution of marijuana and no drug tax stamp. Exhibit A, p. 3, ¶¶ 2,3 and 4; Exhibit C, ¶ 8D. Additionally, Mr. Peterson told Trooper Bauer he had been in trouble for harvesting marijuana and other charges. The State Patrol's dispatch said Mr. Peterson had recent drug charges, including harvesting and selling marijuana. Exhibit A, p. 3, ¶ 1; Exhibit C, ¶ 8B.

These statements are significant to Trooper Bauer for several reasons. He is a law enforcement officer; anyone with an arrest record will cause him notice, as will anyone who lies to him. And, as a law enforcement officer, he knows someone with an arrest for drugs has the potential for re-occurrence. Exhibit C, ¶ 8B. So, Peterson and Busch are likely to be in possession of marijuana. Id. Finally, both men may be lying because those criminal histories–in this case, involving marijuana–may focus the trooper into a direction the men are trying to hide. Exhibit C. ¶ 8D. In United States v. $84,615 in U.S. Currency, 379 F.3d 496, 502 (8th Cir. 2004), the Eighth Circuit affirmed the district court's determination a substantial connection existed between the defendant currency and drug trafficking based, in part, on the claimant's deceptive responses to the trooper's questions.

3. Mr. Peterson told Trooper Bauer Jay Busch and he were going to Colorado for an unknown amount of time. Exhibit A, p.2, ¶4; Exhibit C, ¶ 8E. Since he owns his own business, he can take unlimited time off. Id. Trooper Bauer knows does not know a single person who can take unlimited absences from their employment. "[U]nusual travel plans may provide an *indicia* of reasonable suspicion." United States v. Wood, 106 F.3d 942, 946 (10th Cir. 1997). In United States v. $124,700 in U.S. Currency, 458 F.3d 822, 826 (8th Cir. 2006), the "highly suspicious" route and

11

circumstances of the claimant's travel were part of the evidence establishing a substantial connection between the defendant currency and a drug trafficking offense.

4.   The after-market container.   The *only* conclusion Trooper Bauer would make from finding the hidden compartment, based on his training and experience (Exhibit C, ¶¶ 3, 4, 5, 7 and 8F), is the compartment would contain contraband or currency.  "Because the evidence was highly probative of the existence of a secret compartment, and because it is difficult to imagine a licit purpose for a large hidden compartment in a vehicle the size of a Chevy van, these since of a hidden compartment strongly suggest–and perhaps even single handedly establish–probable cause to search behind the side panels in the rear of the van." United States v. Ledesma, 447 F.3d 1307, 1318 (10th Cir. 2006).

5.   Mr. Peterson's comment, "It's my piggy bank".   The *only* conclusion Trooper Bauer would make, again, based on his training and experience, is the compartment held money.  Exhibit C, ¶¶ 3, 4, 5, 7 and 8 G.

Just as in Martel-Martines and Alverez, *supra*, Trooper Bauer's traffic stop with Sean Peterson, culminating in the discovery of a hidden compartment, provided him with probable cause to conduct a warrantless search of Mr. Peterson vehicle.  That provided him with the authority to conduct the warrantless search of the vehicle at the State Patrol office.

## Conclusion

For the reasons stated herein, the United States respectfully requests this Court deny Sean Peterson's summary judgment motion, enter summary judgment on the United States' behalf, dismiss the Claimant's Answer, and declare the Defendant properties forfeited to the United States of America.

UNITED STATES OF AMERICA,
Plaintiff

DEBORAH R. GILG
United States Attorney

By:  s/Nancy A. Svoboda
NANCY A. SVOBODA (#17429)
Assistant United States Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska  68102-1506
(402) 661-3700

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify on March 23, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Andrew J. Wilson, Attorney at Law

 s/Nancy A. Svoboda
NANCY A. SVOBODA
Assistant United States Attorney

13