IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CV331 |
| | ) | |
| v. | ) | |
| | ) | |
| $57,610.00 IN UNITED STATES CURRENCY and 2000 GMC SONOMA VIN 1GTCS1444Y8119967, | ) ) ) | MEMORANDUM OPINION |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on claimant Sean Joseph Peterson's ("Peterson") motion for summary judgment (Filing No. 19) and plaintiff United States of America's ("plaintiff") cross-motion for summary judgment (Filing No. 22). Peterson submitted a brief (Filing No. 20) and index of evidence (Filing No. 21) in support of his motion for summary judgment. Plaintiff submitted a brief in response to Peterson's motion and in support of plaintiff's cross-motion for summary judgment (Filing No. 23) and an index of evidence (Filing Nos. 24, 25). Peterson did not file a response to plaintiff's cross-motion. Upon review, the Court finds Peterson's motion for summary judgment should be denied and plaintiff's cross-motion for summary judgment should be granted.

### BACKGROUND

This is a civil forfeiture action brought by plaintiff against $57,610.00 in United States Currency and a 2000 GMC Sonoma, VIN 1GTCS1444Y8119967, which were seized on April 9,

2009.  Peterson filed an answer to the complaint contesting forfeiture.

The facts are not in dispute.  At approximately 1:15 a.m. on April 9, 2009, Nebraska State Patrol Trooper J. Bauer stopped the defendant 2000 GMC Sonoma pickup on Interstate 80 for speeding (Filing No. 21-1 at 2).  Bauer approached the vehicle and identified the driver as Peterson and the only passenger as John Busch by their Kentucky driver's licenses (*Id.*).  Bauer obtained the registration and insurance card from Peterson (*Id.*).  At that time, Bauer observed what appeared to be numerous tapping screws on the driver's side floorboard (*Id.*).  Bauer asked Peterson if he knew why he had been stopped, and Peterson acknowledged that he had been speeding (*Id.*).

Bauer asked Peterson to exit the vehicle and sit in the front passenger seat of the patrol unit (*Id.*).  Peterson complied, and Bauer asked Peterson about their travel plans; Peterson stated they were en route to Colorado to go skiing, and they were going to be in Colorado for an unknown amount of time (*Id.*).  Bauer checked the vehicle paper work and noted the vehicle was purchased on April 1, 2009, and insurance was activate as of April 7, 2009 (*Id.*).  Bauer asked Peterson who the passenger was, and Peterson advised the passenger was Jay Busch, a person he had been friends with for many years (*Id.*).

Bauer conducted a license status and criminal history check on Peterson and Busch (*Id.* at 3). Bauer asked Peterson if he had ever been in trouble before (*Id.*). Peterson said yes, for harvesting marijuana, along with other charges (*Id.*). At that time, Grand Island Communications advised Bauer that Peterson had recent drug charges, including charges for harvesting and selling marijuana (*Id.*).

Bauer exited the patrol unit and contacted Busch (*Id.*). Bauer questioned Busch about their travel plans, and Busch advised that they were in en route to Denver to go snow boarding and fishing and planned to stay with one of Peterson's friends in Denver (*Id.*). Bauer asked Busch if he had ever been in trouble before, and Busch said no (*Id.*). Bauer went back to the patrol unit to speak briefly with Peterson, and then returned to the vehicle and asked Busch how long he had known Peterson (*Id.*). Busch responded that he had known Peterson for a long time and that they had met through a mutual friend (*Id.*). Bauer again asked Busch if he had ever been arrested, and Busch responded no (*Id.*).

Bauer went back to the patrol unit and contacted Grand Island Communications (*Id.*). Bauer was advised that Busch had been arrested numerous times for distribution of more than five pounds of marijuana and no drug tax stamp (*Id.*). Bauer issued Peterson a written warning for speeding (*Id.*). Bauer then spoke

to Peterson about a malfunctioning taillight on the vehicle and asked Peterson about Busch's drug use, to which Peterson advised that he had no knowledge of Busch's drug use (*Id.*). Bauer then asked Peterson for consent to search the vehicle and his person; Peterson granted both requests (*Id.*). Bauer conducted a pat down search of Peterson and then seated him back inside the patrol unit (*Id.*).

Bauer contacted Busch and had him exit the vehicle (*Id.*). Bauer asked Busch for consent to search his person and his personal belongings inside the vehicle; Busch granted both requests (*Id.*). Bauer conducted a pat down search of Busch and then seated him in the rear of the patrol unit (*Id.* at 3-4).

Bauer began a search of the vehicle, and Trooper Brehm arrived to assist (*Id.* at 4). During the search, Bauer located a large black box underneath the rear of the vehicle, which he determined was not a gas tank (*Id.*). Bauer tapped on the box and noted it was hollow (*Id.*). Bauer had Brehm look at the box, and Brehm agreed that the box was not a factory part of the vehicle (*Id.*). Bauer and Brehm lowered the tailgate and removed the bed liner (*Id.*). Upon doing so, Bauer and Brehm discovered a large hole cut in the tailgate and a metal compartment, which was held on by four bolts and a metal plate (*Id.*). Bauer and Brehm asked Peterson what was inside the box, and Peterson said, "It's my piggy bank." (*Id.*).

Bauer then placed Peterson and Busch in handcuffs and advised them they were being detained until the container was opened (*Id.*). At that point, Peterson withdrew his consent to search of the vehicle and requested that a search warrant be obtained (*Id.*). Peterson also requested to contact his attorney (*Id.*). Bauer transported Peterson and Busch to the Nebraska State Patrol office in Grand Island, and Brehm waited for a tow truck, which ultimately towed the vehicle to the same location (*Id.*).

At the patrol office, Peterson reiterated his request to speak with an attorney, and Busch refused to answer any questions (*Id.*). When the vehicle arrived, Bauer, Brehm, and Trooper Lewis inspected the metal container (*Id.*). Lewis advised that a tool box in the truck bed needed to be removed (*Id.*). Officers removed two screws from the tool box and lifted it out of the truck (*Id.*). Officers then removed the bed liner, and after doing so, a large hole in the bed of the truck was visible (*Id.*). Officers removed the metal cover over the black box, which revealed a large black duffle bag (*Id.*). Bauer and Lewis removed the duffle bag, opened it, and found a vacuum sealer, two unopened boxes of vacuum seal bags, and a grocery bag, which contained four bundles of United States Currency in various denominations (*Id.*). Three bundles were held together with a rubber band, and one bundle was vacuum sealed (*Id.*). Bauer

located a brown substance inside the duffle bag, which he believed to be marijuana; Investigator Kolb inspected the substance and did not believe it to be marijuana (*Id.* at 5). Officers had a police dog conduct a discretionary sniff of the U.S. Currency, and the dog indicated to the odor of narcotics on the U.S. Currency (*Id.*)

Bauer seized the money, which was transported to Home Federal Bank to be counted (*Id.*).  The vehicle was inventoried, and all personal property was released to Busch and Peterson (*Id.*).  The vehicle was seized and later taken to the Nebraska State Patrol car barn in Lincoln (*Id.*).  The duffle bag, vacuum sealer, vacuum seal bags, and paper bag were seized as evidence and logged into temporary evidence storage (*Id.*).  Bauer received information that the U.S. Currency seized totaled $55,610.00 (*Id.*).

## STANDARD OF REVIEW

Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A fact is material when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

The Court must view the evidence in the light most favorable to the nonmoving party, with all reasonable inferences drawn in that party's favor. *See Matsushita Elec. Indus.*, 475 U.S. at 587. However, when a motion for summary judgment is properly made and supported, the nonmoving party may not rest on the mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

Plaintiff seeks forfeiture of the defendant properties pursuant to 21 U.S.C. § 881(a)(4) and (6). Plaintiff has the initial burden to prove, by a preponderance of the evidence, that the defendant properties are subject to forfeiture. *United States v. Dodge Caravan Grand SE/Sport Van, VIN No. 1B4GP44G2YB7884560*, 387 F.3d 758, 761 (8th Cir. 2004).

The exclusionary rule applies to forfeiture proceedings and bars evidence obtained in violation of the Fourth Amendment. *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 646 (8th Cir. 1999). Accordingly, plaintiff must satisfy its burden of proof with untainted evidence. *Id.*

**A. Search and Seizure**

Peterson claims the defendant properties were wrongly confiscated as the result of an illegal search and seizure. Plaintiff contends the search and seizure of the vehicle were justified under the automobile exception to the warrant requirement.

At the outset, the Court notes that the primary issue in this case is the validity of the search and seizure of Peterson's vehicle after Peterson withdrew his consent. There is no genuine dispute that the search and seizure of the vehicle prior to that time were lawful. First, there is no dispute that the traffic stop was valid. Bauer stopped Peterson's vehicle for speeding, which is a legitimate reason for a traffic stop. *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc). Second, Peterson does not dispute that Bauer's investigation, at least up until and including him issuing Peterson a warning for speeding, was within the scope of a proper traffic stop. Peterson suggests in his brief that Bauer's questioning after he issued Peterson the warning exceeded the scope of the traffic stop, but this argument fails.

"When an officer develops a reasonable, articulable suspicion of criminal activity during a traffic stop, 'he has justification for a greater intrusion unrelated to the traffic offense.'" *United States v. Pereira-Munoz*, 59 F.3d 788, 791 (8th

Cir. 1995) (quoting *United States v. Bloomfield*, 40 F.3d 910, 918 (8th Cir. 1994)) (some internal quotation marks omitted).  Here, the information Bauer learned during the traffic stop provided him with reasonable suspicion to broaden his investigation.  Specifically, Bauer observed numerous screws on the driver's side floorboard, which he believed were significant because they demonstrated that the vehicle probably had after-market alterations; he learned that Peterson had recent drug charges, Busch had several arrests for distribution of marijuana and no drug stamp, and Busch lied about his arrests; and the individuals' travel plans were suspicious because Peterson stated that they were going to Colorado for an unknown amount of time.  When considered in totality, Bauer's limited questioning after he issued Peterson a warning was justified.

Finally, Peterson admits that he initially gave valid consent to search of his vehicle.  Thus, the search of the vehicle, at least until the time when Peterson withdrew his consent, was lawful.  *See United States v. Almendares*, 397 F.3d 653, 660 (8th Cir. 2005) ("A warrantless search does not violate the Fourth Amendment if knowing and voluntary consent was given.").

Accordingly, the Court turns to the primary issue in this case:  whether the automobile exception applies to officers' search and seizure of the vehicle after Peterson withdrew his

consent.[1]  "The warrantless search [or seizure] of a vehicle is constitutional pursuant to the 'automobile exception' to the warrant requirement, if law enforcement had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began."  *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003); *United States v. Sims*, 424 F.3d 691, 693 (8th Cir. 2005).  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  *Wells*, 347 F.3d at 287 (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).  There are two justifications for the automobile exception:  (1) the mobility of vehicles creates circumstances of exigency, and (2) individuals have a reduced expectation of privacy in their automobiles due to "the pervasive regulation of vehicles capable of traveling on the public highways."  *California v. Carney*, 471 U.S. 386, 390-92 (1985).

　　　　Peterson argues the automobile exception does not apply because officers lacked probable cause to search and seize the vehicle.  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found

---

[1] Plaintiff does not contest that Peterson withdrew his consent, and it relies solely on the automobile exception to the warrant requirement.

in a particular place."  *Wells*, 347 F.3d at 287 (quoting *United States v. Fladten,* 230 F.3d 1083, 1085 (8th Cir. 2000)).  "[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication."  *Id.* (quoting *United States v. Horne*, 4 F.3d 579, 585 (8th Cir. 1993)).  "In determining probable cause, law enforcement officers may draw inferences based upon their experience."  *United States v. Cortez-Palomino*, 438 F.3d 910, 913 (8th Cir. 2006).

By the time Peterson withdrew his consent, officers had obtained probable cause to believe the black box contained evidence of a crime.  In addition to the information Bauer learned during the traffic stop, he learned the following additional information during the consensual search (1) underneath the truck bed lining there was a large hole cut in the tailgate, (2) there was an after-market metal container in the hole that was being held on by four bolts and a metal plate, and (3) Peterson referred to the compartment as his "piggy bank."

In *United States v. Martel-Martines*, 988 F.2d 855, 858-59 (8th Cir. 1993), the Eighth Circuit found that evidence of a hidden compartment on a truck, combined with the driver's evasive and inconsistent responses to routine questions supported

-11-

probable cause to search the compartment.  Similarly, other courts have found that evidence of a secret compartment, by itself, or when coupled with additional factors, supports a finding of probable cause.  *United States v. Banuelos-Romero,* 597 F.3d 763, 768 (5th Cir. 2010) (recognizing previous holding that "evidence of a non-standard hidden compartment supports probable cause."); *United States v. Arango*, 912 F.2d 441, 447 (10th Cir. 1990) (probable cause existed to arrest defendant where officers observed evidence indicating truck had a hidden compartment combined with the lack of sufficient luggage for defendant's claimed two-week vacation).

     Here, the Court finds that evidence of the hidden black box on the vehicle, combined with the supporting facts and circumstances known to the officers, provided officers with probable cause to search the black box and seize the vehicle to conduct the search.  The ensuing search further provided officers with probable cause to seize the vehicle and those items found in the container.

     Peterson argues that even if probable cause existed, the automobile exception does not apply because officers did not conduct the search until after the vehicle was towed to the State Patrol Office and after Peterson and the passenger were handcuffed.  Peterson contends that by the time officers searched

the vehicle, no exigent circumstances existed to excuse the need for a warrant.

For purposes of the automobile exception, "[t]he existence of exigent circumstances is determined as of the time of seizure rather than as of the time of search." *United States v. Young*, 567 F.2d 799, 802 (8th Cir. 1977) (citing *Chambers v. Maroney*, 399 U.S. 42, 52 (1970)). Thus, ". . . if the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle." *California v. Acevedo*, 500 U.S. 565, 570 (1991); *see also Wells*, 347 F.3d at 287-88 (quoting *Michigan v. Thomas,* 458 U.S. 259, 261 (1982) (per curiam)) ("[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody.")

Here, exigent circumstances existed at the time the vehicle was seized, as the vehicle was mobile and located on a public interstate, and officers had probable cause to search the black box before Peterson and Busch were handcuffed and the vehicle was towed. Because officers could have conducted a warrantless search of the vehicle while it was stopped on the

-13-

interstate, officers were also permitted to conduct the warrantless search at the Patrol Office.

**B. Forfeiture**

Plaintiff's motion for summary judgment asserts that if the defendant properties were lawfully seized, it is entitled to forfeiture of the defendant properties as a matter of law. Peterson's motion for summary judgment focuses solely on the issue of whether the defendant properties were properly seized, and Peterson did not file a response to plaintiff's cross-motion for summary judgment.  Because the Court has found the defendant properties were properly seized, Peterson has not identified any genuine issues of material fact that preclude summary judgment in favor of plaintiff.  Plaintiff is entitled to judgment as a matter of law that the defendant properties are subject to forfeiture.

### CONCLUSION

Based on the foregoing, Peterson's motion for summary judgment will be denied, and plaintiff's cross-motion for summary judgment will be granted.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 13th day of May, 2010.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court

-14-